# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **LIONEL NED** | * | **CIVIL ACTION NO. 08-0466** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Lionel Ned, born November 30, 1959, filed applications for a period of disability, disability insurance benefits, and supplemental security income on May 16, 2006, alleging disability since July 1, 2005, due to seizure disorder.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated October 14, 2004 to November 23, 2004**. Claimant was seen for seizure disorder. (Tr. 133). He was taking Dilantin and Phenobarbital. Other than showing sinusitis, a CT scan of the brain was normal. (Tr. 129, 131). An EEG was normal. (Tr. 130).

Claimant failed to keep an appointment on November 4, 2004. (Tr. 129).

**(2) Records from Eunice Community Medical Center dated October 5, 2004 to April 26, 2005**. On October 5, 2004, claimant presented in a state of confusion, and was profoundly weak. (Tr. 161). The impression was epilepsy. (Tr. 159). It was noted that claimant had missed recent doses of his seizure medication. (Tr. 152).

On April 25, 2005, claimant reported that he had had a seizure in the car. (Tr. 147). A CT scan of the brain was normal. (Tr. 149). The nurse stressed the importance of taking medication to claimant and his spouse. (Tr. 148).

**(3) Consultative Internal Medicine Examination by Dr. Samuel J. Stagg, Jr. dated December 5, 2005**. Claimant stated that he had been having seizures for about two years, lasting five to 15 minutes. (Tr. 165). His wife

2

reported that when these occurred, claimant had a blank stare and his eyes rolled back. He stated that he had had one the prior day, and sometimes had five to six in a row. He complained that his memory and concentration were bad.

Claimant brought bottles of Phenobarbital and Dilantin, which were empty. He stated that he had been out of medications for possibly three to four months.

On examination, Dr. Stagg noted that claimant possibly had some decreased mental ability. (Tr. 166). He had no problems hearing or speaking, or getting in and out of the chair. His gait was normal.

Claimant's blood pressure was 150/100. He was 5 feet four inches tall, and weighed 139 ½ pounds.

Femoral pulses were normal. Claimant had no edema of the extremities. Pulses and reflexes were normal.

Claimant had no apparent weakness or atrophy. Grip, dexterity and grasping appeared normal. He had normal range of motion of the upper extremities.

Straight leg raising was normal. Claimant had normal range of motion of the knees, and no clubbing or cyanosis of the digits. Vibratory and fine touch sensation were normal.

Claimant walked on his toes and heels without difficulty. He had normal range of motion of the lumbarsacral spine.

Dr. Stagg's impression was seizure disorder and hypertension, etiology undetermined.

**(4) Consultative Psychological Evaluation by Sandra B. Durdin, Ph.D., dated January 26, 2006**. Claimant alleged a seizure disorder, stress, and memory and concentration problems. (Tr. 167). Dr. Durdin observed that claimant malingered on mental status testing. She noted that therefore, the information provided could not be viewed as totally reliable.

On examination, claimant's speech and language were fully intelligible, and vocabulary was adequate. (Tr. 168). Affect and mood were normal. He was evasive and vague. He did not seem credible. He also malingered on memory testing.

Cognitive skills were estimated as high borderline to low average. Thought contact and organization were intact. There were no reported perceptual distortions or suicidal or homicidal ideation. (Tr. 169).

Dr. Durdin's impression was alcohol abuse/dependence, allegedly in remission, and malingering on mental status testing. She opined that claimant's ability to understand, remember, and carry out simple instructions was more than

4

adequate. He also had ability for some detailed instructions within his educational range. His ability to maintain attention and to perform simple repetitive tasks for two-hour blocks of time was adequate. His ability to sustain effort and persist at a normal pace over the course of a 40-hour workweek was adequate.

Claimant's ability to relate to others, including supervisors and co-workers, was adequate. His ability to tolerate the stress and pressure associated with day-to-day work activity and demands was adequate if sober and motivated. He was capable of managing his personal financial affairs, which he had always done.

**(5) Residual Functional Capacity ("RFC") Assessment – Physical dated February 2, 2006**. The evaluator determined that claimant had no exertional limitations. (Tr. 172). He could frequently perform all postural activities, except that he could never climb ladders, ropes, and scaffolds because of seizures. (Tr. 173). He was to avoid all exposure to hazards, such as machinery and heights, because of his history of seizures. (Tr. 175).

**(6) Psychiatric Review Technique ("PRT") Form dated July 26, 2006**. Judith Parks Levy, Ph.D., assessed claimant for seizure disorder, and memory and concentration problems. (Tr. 180). She found that his impairment(s) was not severe. (Tr. 179). She determined that he had mild restriction of activities of daily living. (Tr. 189).

5

**(7) Records from Acadian Medical Center dated April 25, 2006 to May 1, 2006**. On April 25, 2006, claimant presented with a seizure. (Tr. 200). He was talking Dilantin 100 mg. His wife stated that he had not been taking his medications for seizures. (Tr. 201). The impression was an epileptic seizure. (Tr. 198).

On May 1, 2006, claimant complained of chest wall pain. (Tr. 196). A CT scan in the chest showed a partially metallic foreign body consistent with claimant's reported history swallowing a partial plate during a seizure. (Tr. 231, 239). The impression was a foreign body in the esophagus. (Tr. 194, 232).

**(8) Reports from Dr. Randy Miller dated August 18, 2005 to June 13, 2006**. On August 18, 2005, Dr. Miller reported that claimant had a history of seizure disorder, allergic rhinitis, and hepatitis. (Tr. 203). On October 6, 2004, Dr. Miller increased claimant's Dilantin and added Phenobarbitol. Claimant failed to show for a return appointment on November 18, 2005. Dr. Miller referred him for treatment at UMC.

Dr. Miller opined that claimant would be impaired in his ability to perform work-related activities, including walking, lifting, carrying, and handling objects. He was able to hear and speak. He stated that travel would be somewhat

burdensome given claimant's seizure disorder. Dr. Miller noted that sustaining concentration and persistence, as well as social interaction, would be difficult.

On June 13, 2006, Dr. Miller reported that claimant had had visits to the emergency room secondary to non-compliance with medications. (Tr. 202). He noted that if claimant stayed on his seizure medicines, his seizures would likely be better controlled. He stated that he was unsure of claimant's ability to sit, stand, walk, lift, carry, handle objects, hear, speak, or travel, as he had not seen him in several months. He concluded that "[w]ith adequate therapy his chronic seizure disorder should be controlled."

**(9) RFC Assessment – Physical dated July 26, 2006**. The social security examiner determined that claimant had no exertional limitations. (Tr. 205). He had no postural limitations, other than that he could never climb ladders/ropes/scaffolds. (Tr. 206). He was to avoid all exposure to hazards, such as machinery and heights. (Tr. 208). He was able to perform his activities of daily living. (Tr. 209).

**(10) PRT dated July 26, 2006**. Dr. Levy found that claimant had no medically determinable impairment. (Tr. 212). His statements were partially credible. (Tr. 224).

**(11) Claimant's Administrative Hearing Testimony**. At the hearing on July 25, 2007, claimant was 47 years old. (Tr. 251). He testified that he was 5 feet two inches tall, and weighed 135 pounds. (Tr. 252). He stated that he drove.

Claimant stated that he had completed the tenth grade in regular classes. (Tr. 253). He had past work experience as a wing hopper for a crop duster, tree trimmer, construction worker, and a laborer at a crawfish processing plant. (Tr. 253-54). He testified that he had stopped working because of seizures.

Claimant testified that he took Phenobarbital and Dilantin. (Tr. 255). He stated that the medications worked at first, but he still had seizures. He reported that he last had a seizure about one year prior.

Claimant testified that when the seizures came on, he started shaking and got a "funny feeling." (Tr. 256). He reported that he had swallowed part of his dentures during a seizure in 2006. He stated that he had run out of medications before, but that he was going to get some more. (Tr. 257). Additionally, he complained that he had memory problems and occasional headaches. (Tr. 262).

As to activities, claimant stated that he visited with people. (Tr. 258). He did yard work, and drove around the neighborhood every day. He also watched television. (Tr. 260).

Claimant reported that he smoked a third of a pack of cigarettes per day. (Tr. 259). He stated that he had stopped drinking.

**(12) Administrative Hearing Testimony of Claimant's Wife, Mary Ned**. Mrs. Ned testified that claimant's memory was bad after his seizures. (Tr. 268). She stated that he used to drink, but did not anymore. She said that she had to remind him to take his medications. (Tr. 269).

Claimant's wife testified that claimant had had a seizure about one month prior. (Tr. 269). She said that he had had one two months before that. She stated that during a seizure, claimant shook and bit down, and drooled from his mouth. (Tr. 269-71). She also reported that he had small seizures in which he would stare for about 15 to 20 minutes. (Tr. 270).

**(13) Administrative Hearing Testimony of Lionel Bordelon, Vocational Expert ("VE")**. Mr. Bordelon described claimant's past work as a tree trimmer as heavy with an SVP of 4; a pilot's helper as medium with an SVP of 3; a construction laborer as very heavy with an SVP of 2, and a seafood processor as light with an SVP of 2. (Tr. 277). The Administrative Law Judge ("ALJ") posed a hypothetical in which he asked the VE to assume a claimant of the same age, education, and work experience; who had no exertional limitations; could not work around heights or dangerous machinery because of his seizure disorder, and

9

could not do complex work. (Tr. 278). In response, Mr. Bordelon testified that claimant could work as a hand packer, of which there were 363,980 jobs nationally and 2,922 statewide, 50% of which would fit the hypothetical; weigher, measurer or checker, of which there were 72,321 positions nationally and 997 statewide, 25% of which would fit the hypothetical, and assembler, of which there were 1,233,669 positions nationally and 6,263 statewide, 30% of which would fit the hypothetical. (Tr. 278).

When the ALJ modified the hypothetical to assume a claimant who had a seizure disorder causing seizures three or four times a month, which made him unable to follow even simple one- to two-step instructions, Mr. Bordelon opined that claimant could not do these jobs or any other jobs.

**(14) The ALJ's Findings are Entitled to Deference**. Claimant argues that the ALJ erred in finding that he had the RFC to perform a full range of work at all exertional levels, but was precluded from working at unprotected heights and around dangerous machinery, and could not perform complex work. [rec. doc. 10, p. 6].

First, claimant argues that the ALJ erred in finding that claimant did not meet or equal the listings for neurological disorders.[1] One of the criteria for meeting the listing for epilepsy is that convulsive seizures occur more frequently than once a month, and non-convulsive seizures occur more frequently than once weekly, "in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 11.02, 11.03. However, the record shows that claimant's seizures did not occur more frequently than once a month. Additionally, the medical records are replete with evidence that claimant was non-compliant with his medications.

Dr. Stagg observed that claimant had brought empty bottles of Phenobarbital and Dilantin to the examination, and that claimant had been out of medications for possibly three to four months. (Tr. 165). Additionally, the physicians at Eunice Community Medical Center noted that claimant was non-compliant with his seizure medications. (Tr. 152). Further, claimant's treating physician, Dr. Miller, noted that if claimant stayed on his seizure medicines, his

---

[1] Among the evidence that claimant's attorney submitted into the record is a photograph of claimant having an alleged seizure. [rec. doc. 10, Exhibits]. However, this incident is not documented by the medical records. Claimant's attorney also described the incident, which he had witnessed, in his brief. [rec. doc. 10, p. 3]. It is well established that statements and arguments of attorneys are not evidence. *See Thomas v. City of Monroe*, 157 F.3d 901 (5th Cir. 1998); *Gregoire v. K-Mart Corp.*, 71 F.3d 875 (5th Cir. 1995).

seizures would likely be better controlled. (Tr. 202). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Further, Dr. Miller opined that "[w]ith adequate therapy [claimant's] chronic seizure disorder should be controlled." (Tr. 202-03). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). In light of claimant's repeated failure to take his medications, he is not entitled to social security benefits.

Also significant is claimant's lack of credibility. As noted by the ALJ, Dr. Durdin opined that claimant malingered on mental status testing. (Tr. 16, 167, 169). The ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Additionally, claimant has attached new evidence to his brief dated July, 2007 and February, 2008 regarding other seizures.[2] [rec. doc. 10, Exhibit 1].

---

[2]The records dated February, 2008, indicate that claimant was non-compliant with his medications.

When new evidence becomes available after the Secretary's decision and there is a reasonable possibility that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). In order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. *Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995).

Reviewing the materiality of the new evidence requires the court to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision. *Ripley*, 67 F.3d at 555.

In this case, claimant has not shown good cause for failing to incorporate the records from 2007. Additionally, the evidence from 2008 did not relate to the time period for which the disability benefits were denied. In any event, given the fact that these records show that claimant continued to be non-compliant with his medications, there is not a reasonable probability that this new evidence would change the outcome of the Secretary's decision. Accordingly, remand is not warranted on that basis.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** ***DOUGLASS V. UNITED***

***SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed March 31, 2009, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE